# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1166

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska |
| Eric B. Reinholz; | * | |
| Margaret E. Chevalier, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted:  May 12, 2000
Filed:  March 29, 2001

_____

Before McMILLIAN, BRIGHT, and WOOD[1], Circuit Judges.

_____

McMILLIAN, Circuit Judge.

The United States appeals the district court's order granting defendant Eric B. Reinholz's motion to suppress evidence and statements and defendant Margaret E. Chevalier's motions to suppress evidence. United States v. Reinholz, No. 8:99CR4 (D. Neb. Nov. 19, 1999).  The Government argues that the district court erred when it granted Reinholz's and Chevalier's motions to suppress statements and evidence from the search of their residence, Honda Prelude, and Reinholz's Toyota Camry.  The

_____

[1]The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

Government also argues that the district court erred when it granted Reinholz's motion to suppress his post-arrest statements. For the reasons discussed below, we reverse in part, affirm in part, and we remand the case for further proceedings consistent with this opinion.

I.     JURISDICTION

The district court acquired jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this interlocutory appeal pursuant to 18 U.S.C. § 3731. The Government's notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

II.    BACKGROUND

Iodine crystals may be used as an ingredient to manufacture methamphetamine.[2] As part of its effort to investigate methamphetamine trafficking, the Omaha Police Department asked pharmacies to report anyone buying iodine crystals. On Friday, October 2, 1998, a local pharmacist telephoned Omaha Police Officer Steven Podany and reported that Eric Reinholz ordered thirty grams of iodine crystals. The pharmacist, who wanted to remain anonymous, reported that Reinholz told the pharmacist that he wanted the crystals to clean tools, that Reinholz arranged to pick up the crystals on November 2, 1998, because they were not in stock, and that Reinholz previously purchased iodine crystals from the pharmacy. The pharmacist provided a physical description of Reinholz and the make, model, and license plate number of Reinholz's car. The pharmacist thought that Reinholz was manufacturing, distributing, and using methamphetamine because he knew of no legitimate use for iodine crystals.

---

[2]Iodine crystals may also be used by farriers, farmers, and veterinarians to treat infections in horses' hooves, as an ingredient for producing germicides, fungicides, antiseptic, as a disinfectant, and in animal feeds.

On Tuesday, October 20, 1998, a pharmacist at the same pharmacy telephoned Officer Podany and reported that Reinholz planned to be at the pharmacy the next day to pay for the iodine crystals. Omaha Police Sergeant Fidone and Officer Hadcock conducted surveillance of the pharmacy and saw Reinholz enter and leave the pharmacy. They followed Reinholz to work and noted the color, make, model (gray Toyota Camry), and license plate number of Reinholz's car. Police investigation revealed that the Toyota Camry was registered to Reinholz, but the registration address was not his residence. Officer Podany discovered Reinholz's current address and learned that Reinholz lived with Margaret Chevalier, at her house.

The police investigation continued. Sergeant Fidone returned to the pharmacy and questioned the pharmacists. The police periodically drove by Reinholz and Chevalier's residence and conducted record checks of the vehicles parked there. The police were unable to determine whether any of the individuals who visited the house were involved in drug trafficking. They determined that Chevalier had been convicted of drug charges, but they did not find any record for Reinholz. On Tuesday, November 3, 1998, Reinholz picked up the iodine crystals.

On Wednesday, November 18, 1998, Officer Podany grabbed four plastic trash bags at the curb in front of Chevalier's house. The next day, Officer Podany searched the trash bags and found twenty hypodermic syringes with residue, a brass pipe with residue, and documents identifying Reinholz and Chevalier. Officer Podany sent four syringes and the brass pipe to a state laboratory for testing. Residue on the four syringes tested positive for methamphetamine and residue on the brass pipe tested positive for cocaine.

On Friday, November 20, 1998, Officer Podany prepared an application and affidavit for a search warrant for Reinholz's person and the residence. The fifth paragraph of the affidavit provided:

That the following are the grounds for issuance of a search warrant for said property and the reasons for the Affiant's belief, to-wit:  On 05 October 1998, your Affiant Officer received information from a confidential and reliable source that a party REINHOLZ, Eric B., is involved in the use of methamphetamine.  According to the source, REINHOLZ may also be involved in the distribution of methamphetamine.  According to the source, REINHOLZ drives a gray 1990 Toyota Camry with Nebraska license plates:  1-EH326.

(Appellant's App. at A-37.)  The affidavit also described Chevalier's house, the trash bags, the four syringes with methamphetamine residue, the brass pipe with cocaine residue, Chevalier's record, and Reinholz's physical description.  The state judge issued a search warrant for the residence and Reinholz's person for methamphetamine and cocaine, monies and records of drug trafficking, and items identifying the occupants of the house.

On Tuesday, November 24, 1998, Officers Podany and Hadcock approached Reinholz as he was leaving work shortly after 5:00 p.m.  They identified themselves, displayed their badges, and told Reinholz they had a search warrant for his person and his residence.  They stood him spread eagle, patted him down for weapons, handcuffed him, placed him in the back of Officer Podany's unmarked police car, and drove for twenty-five minutes through rush hour traffic.  They did not advise Reinholz of his Miranda rights and they did not question him, but they did inform him that they were taking him to his residence to execute the search warrant.  Reinholz asked whether the search had anything to do with the iodine crystals and whether Chevalier would be charged if anything was found in the house.

The officers stopped in a junior high school parking lot located about two blocks from Chevalier's  house.  Officer Podany got out of the car and Reinholz told Officer Hadcock that they would probably find drug paraphernalia in the house but that anything found was his and not Chevalier's.  When Officer Podany returned to the car,

Officer Hadcock told him what Reinholz said. Officer Podany advised Reinholz of his Miranda rights. Reinholz waived his Miranda rights and agreed to talk. Reinholz was still handcuffed and sitting in the back of the unmarked police car. Reinholz said that the police would probably find drug paraphernalia in the house but that it belonged to him and not Chevalier.

Reinholz agreed to accompany the police executing the search warrant. The police entered the house and found Chevalier in the living room. After the police conducted a protective sweep, Officer Podany questioned Chevalier. The officer did not advise her of her Miranda rights. He asked her about Reinholz's involvement with methamphetamine and whether there was methamphetamine in the house. Chevalier became very upset and began to cry. Another police officer informed Officer Podany that they had discovered a methamphetamine laboratory in the garage, and Officer Podany stopped asking Chevalier questions.

While he was executing the search warrant, Sergeant Fidone walked past a Honda Prelude parked in the driveway. He noticed that the engine had been removed and he recognized drug paraphernalia (including a bottle of iodine crystals, a plastic bag of reddish powder, a container of lye, an Ohaus scale, and several jars containing fluids) in the front seat and back seat. Later investigation revealed that the Honda Prelude was registered to Cody Bruckner.

Officer Podany approached Reinholz, reminded him of his Miranda rights, told Reinholz they discovered drug paraphernalia in the garage, and asked Reinholz if he was manufacturing methamphetamine. Reinholz admitted that he was a methamphetamine addict and that he had manufactured methamphetamine two days before. Reinholz denied selling methamphetamine. Reinholz told officers that Chevalier was an occasional methamphetamine user and that he had given her methamphetamine. Reinholz also said that he manufactured methamphetamine in the garage and in the back seat of the Honda Prelude. Reinholz orally consented to a

search of his Toyota Camry, but he did not sign a consent form explaining his right to refuse consent. Later, Officer Hadcock searched Reinholz's Toyota Camry and found a small black nylon bag containing drug paraphernalia.

In January 1999, a federal grand jury indicted Reinholz and Chevalier on charges of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846, 841, and maintaining a place for the purpose of manufacturing methamphetamine, in violation of 21 U.S.C. § 856. In addition, the grand jury charged Reinholz with manufacturing and attempting to manufacture methamphetamine within 1000 feet of a public elementary school in violation of 21 U.S.C. § 860(a), and unlawful possession of equipment, products, and chemicals which could be used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6).

Chevalier and Reinholz filed motions to suppress. Chevalier filed motions to suppress: (1) evidence and statements seized by the Government as a result of the search of Reinholz's Toyota Camry; (2) her statements made during the search of her residence; (3) evidence and statements seized by the Government as a result of the search of the Honda Prelude; and (4) evidence and statements obtained by the Government as a result of the search of her residence. Reinholz challenged the legality of his arrest and filed a motion to suppress the evidence and statements obtained as a result of his illegal arrest, the search of the residence, the search of the Honda Prelude, and the search of his Toyota Camry. The magistrate judge granted Reinholz's motion for a Franks v. Delaware, 438 U.S. 154, 155-56 (1978), hearing.

During the Franks hearing, Omaha Police Officers Podany and Hadcock testified and so did Reinholz. The magistrate judge recommended denying Chevalier's motions to suppress: (1) evidence and statements seized by the Government as a result of the search of Reinholz's Toyota Camry; (2) evidence and statements seized by the Government as a result of the search of the Honda Prelude; and, (3) evidence obtained by the Government as a result of the search of her residence. The magistrate judge recommended granting Chevalier's motion to suppress her statements obtained during

-6-

the search of her residence. The magistrate judge recommended denying Reinholz's motion to suppress evidence seized from the residence and the Honda Prelude, but recommended granting Reinholz's motion to suppress with respect to his post-arrest statements and the evidence seized from his Toyota Camry.

Reinholz, Chevalier, and the Government objected to the magistrate judge's recommendation. After conducting a de novo review pursuant to 28 U.S.C. § 636(b)(1)(C), the district court adopted the factual findings made by the magistrate judge, modified the magistrate judge's report and recommendation, and granted all Reinholz's and Chevalier's motions to suppress evidence and statements. The Government appealed pursuant to 18 U.S.C. § 3731. The Government does not appeal that part of the district court order granting Chevalier's motion to suppress her statements.

III.    DISCUSSION

A.    SEARCH WARRANT

We review the trial court's findings of fact for clear error and we give deference to the inferences drawn from those facts by law enforcement officers, the court that issued the search warrants, and the trial court. Ornelas v. United States, 517 U.S. 690, 691 (1996); see also United States v. Ball, 90 F.3d 260, 262 (8th Cir. 1996), cert. denied, 522 U.S. 1152, and reh'g denied, 523 U.S. 1134 (1998). We review de novo whether the facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Id.

The district court determined that Officer Podany misled the issuing judge in his affidavit by using the terms "confidential and reliable" in a manner that implied that his source had personal knowledge of Reinholz's methamphetamine use and distribution. In fact, Officer Podany's source was a local pharmacist who knew only that Reinholz

purchased iodine crystals. The district court deleted the fifth paragraph and found that the remainder of the affidavit was insufficient to support a finding of probable cause.

The Government argues that the district court applied the wrong analysis when it evaluated the affidavit and erred when it determined that Officer Podany recklessly misled the issuing judge by misrepresenting the nature of his source. The Government argues that the affidavit's fifth paragraph did not misrepresent but, rather, omitted information that his source was the pharmacist who personally observed Reinholz purchase iodine crystals. The Government claims that the district court should not have deleted the fifth paragraph but should have considered whether the affidavit supported a finding of probable cause when supplemented by the omitted information. In the alternative, the Government argues that, even without the fifth paragraph and without supplementing the omitted information, the affidavit supports a finding of probable cause.[3]

Reinholz and Chevalier argue that the district court applied the correct analysis when it determined that Officer Podany recklessly used the term "confidential and reliable" source to mislead the issuing judge about the nature of his source and properly deleted the falsehoods contained in the fifth paragraph. Reinholz also argues that Officer Podany recklessly omitted information. Reinholz claims that Officer Podany omitted that the police surveillance of his residence and investigation of its visitors failed to connect Reinholz to drug use or distribution and that Reinholz did not have a criminal record. Reinholz and Chevalier both conclude that the district court did not err in finding the affidavit did not support a finding of probable cause.

_____

[3]The Fourth Amendment protects a defendant's sufficient and reasonable expectation of privacy in the place to be searched. Minnesota v. Carter, 525 U.S. 83, 87 (1998). The record is unclear as to whether Reinholz had a sufficient and reasonable enough expectation of privacy in Chevalier's residence to trigger Fourth Amendment protection. The Government, however, failed to raise this issue on appeal and, therefore, it is waived.

A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth. Franks v. Delaware, 438 U.S. at 171. To prevail on a Franks claim the defendants must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) that the affidavit's remaining content is insufficient to establish probable cause. The same analysis applies to omissions of fact. The defendant must show: (1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); see also United States v. Humphreys, 982 F.2d 254, 258 n.2 , 259 (8th Cir. 1992) (citing United States v. Lueth, 807 F.2d 719, 726 (8th Cir. 1986)), cert. denied, 510 U.S. 814 (1993); United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986).

The district court did not err in its analysis of Officer Podany's affidavit. The district court properly analyzed Officer Podany's affidavit as Franks requires. First, the court analyzed whether Officer Podany's affidavit contained a false statement or omission made knowingly and intentionally, or with reckless disregard for the truth. It concluded that it contained false statements. Second, it turned to the question of whether the affidavit's remaining content was sufficient to establish probable cause.

The district court did not err when it determined that Officer Podany recklessly misled the issuing judge by misrepresenting the nature of his source. Officer Podany's claim to have received information from a "confidential and reliable" source recklessly misrepresented the nature of his source by implying that his informer had personal knowledge of Reinholz's methamphetamine use and distribution. Officer Podany knew that the sole basis for the pharmacist's opinion concerning Reinholz's methamphetamine use was Reinholz's purchase of iodine crystals. Officer Podany's "confidential" characterization was misleading because the pharmacist dropped his request for

anonymity by the time Officer Podany filed his affidavit. Officer Podany's reliability claim was misleading because it implied that his source had knowledge of Reinholz's drug activities and that independent police investigation corroborated the informant's declarations. In fact, police investigation merely corroborated the pharmacist's description of Reinholz's automobile and license plate. Contrary to Officer Podany's statement, the pharmacist was not a confidential source and his reliability was not related to any personal knowledge of or corroborated information concerning Reinholz's methamphetamine use. Therefore, the district court did not err when it determined that Officer Podany recklessly misled the issuing judge by misrepresenting the nature of his source.

The Government claims that the district court should not have deleted the fifth paragraph but, rather, should have considered whether the affidavit supported a finding of probable cause when supplemented by the omitted information. Reinholz and Chevalier argue that the district court properly deleted the fifth paragraph because the fifth paragraph of Officer Podany's affidavit contained misrepresentations.

The district court properly deleted the misrepresentations contained in the fifth paragraph of the affidavit. Officer Podany's affidavit included false statements made with reckless disregard for the truth. We remedy a Franks misrepresentation by deleting the false statements. The entire fifth paragraph of Officer Podany's affidavit contains false information and the district court was correct to delete it. Thus, the district court did not err when it deleted the fifth paragraph of Officer Podany's affidavit.

We recognize that the exclusionary rule does not apply to negligent misrepresentations or omissions. United States v. Schmitz, 181 F.3d 981, 986 (8th Cir. 1999) (citing Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994)). In any case, retroactively supplementing the affidavit with material omissions bolstering probable cause would undermine the deterrent purpose of the exclusionary rule. Stone v. Powell,

428 U.S. 465, 486-89 (1976) (holding deterrence of Fourth Amendment violations by law enforcement personnel is the prime purpose of the exclusionary rule); see also United States v. Fletcher, 91 F.3d 48, 52 (8th Cir. 1996) (same), cert. denied, 520 U.S. 1121 (1997); Williams v. Nix, 700 F.2d 1164, 1174 (8th Cir. 1983) (same), rev'd on other grounds, 467 U.S. 431 (1984). Therefore, the district court did not err when it refused to supplement the affidavit with more precise information concerning the nature of Officer Podany's source.

Next, we consider whether the remaining content of the affidavit supports a finding of probable cause to search Reinholz and Chevalier's residence.[4] Officer Podany's affidavit, without the fifth paragraph, sets out Reinholz's name, address, a personal description of him and his car, the drug paraphernalia gathered from the trash search, and Chevalier's drug record. The affidavit does not include any information concerning Reinholz's iodine crystal purchase. The magistrate judge concluded that the affidavit, without the fifth paragraph, established probable cause. The district court disagreed, and concluded that the affidavit, without the fifth paragraph, did not establish probable cause.

The Government cites a number of cases in support of its argument that affidavits based almost entirely on evidence gathered from trash may establish probable cause. United States v. Hohn, 8 F.3d 1301 (8th Cir. 1993); see also United States v. Gregg, 829 F.2d 1430 (8th Cir. 1987), cert. denied, 486 U.S. 1022 (1988); United States v. Biondich, 652 F.2d 743 (8th Cir.), cert. denied, 454 U.S. 975 (1981); United States v. Sumpter, 669 F.2d 1215 (8th Cir. 1982). Reinholz and Chevalier argue that the

_____

[4]The Government appeals the district court order granting Reinholz's and Chevalier's motions to suppress the evidence gathered from the residence. The Government does not appeal the district court's order with respect to the search warrant for Reinholz's person and, therefore, it is waived. Accordingly, we consider solely the search warrant with respect to the residence and not with respect to Reinholz's person.

affidavit does not support a finding of probable cause without the fifth paragraph and they attempt to distinguish the Government's cases by showing that, in each case cited by the Government, probable cause was supported by more than mere trash evidence.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures. U.S. CONST. amend. IV; see also Illinois v. Gates, 462 U.S. 213, 230, 235 (1983). To determine whether probable cause exists to support a search warrant we look at the "totality of the circumstances." Id. A warrant is supported by probable cause if "there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." United States v. Mahler, 141 F.3d 811, 813 (8th Cir.) (quoting Gates, 462 U.S. at 238 (internal quotations omitted)), cert. denied, 525 U.S. 885 (1998). We assess probable cause from the viewpoint of a reasonably prudent police officer, United States v. Peep, 490 F.2d 903, 906 (8th Cir. 1974), acting in the circumstances of the particular case, United States v. Regan, 525 F.2d 1151, 1155 (8th Cir. 1975). We remain mindful that probable cause is a practical, factual, and nontechnical concept, dealing with probabilities. Gates, 462 U.S. at 230.

We believe that Officer Podany's affidavit states sufficient facts to support a finding of probable cause that illegal drugs were present in Reinholz and Chevalier's residence at the time the warrant was issued. This is a fact-intensive Fourth Amendment inquiry resting on probabilities and, therefore, we believe that none of the cases cited by the parties controls. See United States v. Button, 653 F.2d 319, 327 (8th Cir. 1981) ("Because of the kaleidoscopic myriad that goes into the probable cause mix seldom does a decision in one case handily dispose of the next.") (quoting United States v. Davis, 458 F.2d 819, 821 (D.C. Cir. 1972) (internal quotations omitted)). Without the fifth paragraph, the evidence gathered from the trash provided a substantial supporting basis for the search warrant. Officer Podany collected four white plastic trash bags found inside two trash cans, placed at the curb in front of Reinholz and

Chevalier's residence, the day before the normal day for trash collection. Officer Podany's search of the four trash bags revealed twenty syringes with methamphetamine residue, a brass pipe with cocaine residue, and documents identifying Reinholz and Chevalier as the occupants of the house. The information was not stale: the trash was deposited for collection and seized on Wednesday; Officer Podany's search on Thursday uncovered the syringes, brass pipe, and documents connecting Reinholz and Chevalier to the trash; that Friday, laboratory tests confirmed methamphetamine in four of the syringes and cocaine in the brass pipe and Officer Podany filed the application for the search warrant; and, the search warrant was executed the following Tuesday. The syringes with methamphetamine residue and the brass pipe with cocaine residue point to a significant amount of drug activity and suggest that evidence of continued drug activity would probably be found in the house. Another trash pick-up was not necessary to confirm the presence of drugs because the affidavit stated that Chevalier occupied the house and had a drug record. Chevalier's drug record connects the evidence gathered from the trash search to the residence and we believe that, on those facts, Officer Podany's affidavit states sufficient facts to support a finding of probable cause that illegal drugs were present in Reinholz and Chevalier's residence at the time the warrant was issued. Therefore, we hold that the district court erred when it granted Reinholz's and Chevalier's motions to suppress the evidence obtained by the Government as a result of the search of the residence.

B.    HONDA PRELUDE SEARCH

The Government argues that the evidence gathered from the search of the Honda Prelude should not have been suppressed as "fruit of the poisonous tree" because Officer Podany's affidavit supported probable cause to search Reinholz and Chevalier's residence and the Honda Prelude was within the curtilage of the residence and in plain

view.[5] Reinholz and Chevalier argue that the evidence gathered from the search of the Honda Prelude was properly suppressed because the search warrant for the residence was invalid and the Honda Prelude search was "fruit of the poisonous tree."

The search of the Honda Prelude did not violate the Fourth Amendment because it was in the plain view of the police officers executing a valid search warrant for the house. Texas v. Brown, 460 U.S. 730, 738, 739 n.4 (1983) (determining "plain view" provides grounds for seizure of an item when an officer's access to the object has some prior justification under the Fourth Amendment). The "plain view" doctrine permits police to seize an item not specified in a search warrant if the police are lawfully in a position to observe the item and its incriminating character is immediately apparent. Horton v. California, 496 U.S. 128, 136-38 (1990). When the police executed the valid search warrant on Reinholz and Chevalier's residence the Honda Prelude was sitting in the driveway and drug paraphernalia was immediately apparent through the car's windows. Thus, the search of the Honda Prelude did not violate the Fourth Amendment and, therefore, the district court erred when it granted Reinholz's and Chevalier's motions to suppress the evidence obtained by the Government as a result of the search of the Honda Prelude.

C.    REINHOLZ'S ARREST

The district court determined that Reinholz was illegally arrested at work and granted his motion to suppress his post-arrest statements because they were the fruit of his illegal arrest. The Government maintains that Reinholz's warrantless arrest was proper on the basis of probable cause. We reject the Government's argument.

---

[5]The record is unclear as to whether Reinholz and Chevalier had a sufficient and reasonable expectation of privacy in the Honda Prelude registered to Cody Bruckner to trigger Fourth Amendment protection. The Government, however, failed to raise this issue on appeal and, therefore, it is waived.

It stands undisputed that Reinholz's seizure rose to the level of a full-scale arrest. Officers Podany and Hancock met Reinholz at his workplace shortly after 5:00 p.m. As Reinholz approached his vehicle, the plain clothes officers identified themselves, made him stand spread eagle against his Toyota Camry, patted him down for weapons, handcuffed him, and placed him in the back seat of their unmarked police car. He was not free to leave. United States v. Tovar-Valdivia, 193 F.3d 1025, 1027-28 (8th Cir. 1999) (determining that defendant was under arrest when police officer handcuffed him).

The Government argues that Reinholz's arrest may be justified because it was carried out in connection with a lawful search warrant. We disagree. Reinholz's arrest cannot be justified under Michigan v. Summers, 452 U.S. 692 (1981), in which the Supreme Court held that police officers, executing a valid warrant to search a house, properly detained a resident of the house as he was walking down the front steps. In Summers, the intrusiveness of detaining an occupant of the premises being searched was outweighed by the law enforcement interests in: (1) preventing flight; (2) minimizing the risk of harm to the officers; and (3) conducting an orderly search. Id. at 701-03; see also United States v. Hogan, 25 F.3d 690, 693 (8th Cir. 1994). Summers does not apply to this case, however, because Reinholz was not on the premises being searched when he was detained. In fact, he was nowhere near his residence. Rather, he was at work, at least a twenty-five-minute drive from his residence. Reinholz was not a flight risk and his seizure did not minimize any possible risk he posed to the officers because Reinholz was at work and he was unaware of the warrant. Therefore, Reinholz's arrest cannot be justified under Summers as a legitimate detention of an occupant of the premises to be searched.

The Government analogizes to United States v. Sherrill, 27 F.3d 344 (8th Cir.), cert. denied, 513 U.S. 1048 (1994), in support of its argument that Reinholz's arrest was legal because the officers had probable cause to arrest him. Sherrill, however, does not apply to this case. In Sherrill, police officers executing a valid search warrant

-15-

saw Sherrill leave his residence in his car, they stopped him one block away, and detained him. The court examined the totality of the circumstances and held that probable cause existed because independent police investigation corroborated information from a reliable and confidential informant that Sherrill was dealing crack from his house and surveillance detected an unusual amount of pedestrian traffic consistent with drug dealing. In this case, however, no informant notified police, there existed no corroborating independent police investigation, and surveillance failed to reveal any criminal activity.

Probable cause for an arrest exists when the totality of circumstances demonstrates that the arresting officer personally knows or has been reliably informed of sufficient facts to warrant a belief that a crime has been committed and that the person to be arrested committed it. Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (citing United States v. Washington, 109 F.3d 459, 465 (8th Cir. 1997)).

We have carefully reviewed the record and we conclude that the police officers did not have probable cause to arrest Reinholz because the arresting officers did not personally know or have reliable information to warrant a belief that Reinholz committed a crime. Reinholz did not have a drug record, police did not observe him engaged in any illegal activity, there was no corroborating independent police investigation, and surveillance failed to reveal any criminal activity connected to the visitors of Chevalier's house. Police had been reliably informed that Reinholz legally purchased iodine crystals and their trash search revealed drug paraphernalia. That information does not provide sufficient facts to warrant a belief that Reinholz committed a drug offense. Our conclusion that police officers did not have probable cause to arrest Reinholz does not contradict our view that the affidavit supports probable cause to search Chevalier's house. Chevalier's drug record connected the drug paraphernalia gathered from the trash to her house and, therefore, provided the critical link supporting probable cause for the search of her house. The police officers did not, however, have probable cause to arrest Reinholz because the information in their

possession at the time of the arrest did not sufficiently warrant a belief that Reinholz committed a crime. Therefore, we hold that the district court did not err when it determined that Officers Podany and Hancock illegally arrested Reinholz.

### D.    REINHOLZ'S STATEMENTS

Reinholz argues that his statements to police following his illegal arrest should be suppressed. The Government argues that Reinholz's statements before he was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), should not be suppressed because they were voluntary and his statements after he was advised of his Miranda rights should not be suppressed because the Miranda warnings rid the taint of his illegal arrest. The district court granted Reinholz's motion to suppress his statements (made before and after the Miranda warnings) because it determined that Reinholz was illegally arrested and there had been no causal break between Reinholz's unlawful arrest and his statements to police officers.

The exclusionary rule prohibits the admission of physical and testimonial evidence gathered illegally. Wong Sun v. United States, 371 U.S. 471, 484-88 (1963). There are, however, three exceptions to the exclusionary rule. United States v. Dickson, 64 F.3d 409, 410 (8th Cir. 1995), cert. denied, 516 U.S. 1064 (1996); see also Hamilton v. Nix, 809 F.2d 463, 465-66 (8th Cir.) (en banc), cert. denied, 483 U.S. 1023 (1987). Under the "independent source doctrine," the challenged evidence is admissible if it came from a lawful source independent of the illegal conduct. Id. Under the "attenuated connection doctrine" the challenged evidence is admissible if the causal connection between the constitutional violation and the discovery of the evidence is so attenuated as to rid the taint. Id. Under the "inevitable discovery doctrine," the challenged evidence is admissible if it inevitably would have been discovered by lawful means without reference to the police misconduct. Id. In addition, for the statements given to police after an unlawful arrest to be admissible, the statement must not only be voluntary under Fifth Amendment standards but must not

-17-

be the result of an unconstitutional seizure. <u>Brown v. Illinois</u>, 422 U.S. 590, 602 (1975). We evaluate four factors to determine whether statements made to the police after an illegal arrest are admissible: (1) whether the suspect has been advised of his <u>Miranda</u> rights prior to giving his statement; (2) the temporal proximity of his statements to his illegal seizure; (3) the existence of intervening causes between the illegal arrest and the statements; and (4) the purpose or flagrancy of the official misconduct. <u>Id.</u> at 603-604.

Officers Podany and Hadcock illegally arrested Reinholz in his employer's parking lot. They did not have an arrest warrant. They made him stand spread eagle, patted him down for weapons, handcuffed him, and placed him in the back of Officer Podany's unmarked police car. They did not advise Reinholz of his <u>Miranda</u> rights and they did not question him, but they told him they were taking him to his residence to execute a search warrant. For twenty-five minutes the officers drove through rush-hour traffic to a junior high school parking lot located about two blocks from Chevalier's house. Reinholz asked the officers why he was being arrested, and he made several statements during the drive and in the parking lot. Officer Podany ultimately advised Reinholz of his <u>Miranda</u> rights after they reached the junior high school parking lot. Reinholz was still handcuffed and sitting in the back of the unmarked police car.

We have carefully reviewed the record and we believe that Reinholz's first set of statements are inadmissible because they followed directly from his illegal arrest and no intervening event purged the taint of his illegal arrest. We also believe that his post-<u>Miranda</u> statements are inadmissible because the <u>Miranda</u> warnings did not purge the taint of his illegal arrest. Therefore, we hold that the district court did not err when it granted Reinholz's motion to suppress his post-arrest statements to police.

E.    TOYOTA CAMRY SEARCH

Reinholz and Chevalier argue that the evidence seized from the search of his Toyota Camry should be suppressed because Reinholz's consent was tainted by his illegal arrest.  The Government argues that the evidence seized from Reinholz's Toyota Camry should not be suppressed because his consent to the search was voluntary.  The district court granted Reinholz's and Chevalier's motions to suppress because it determined that Reinholz's consent to search his Toyota Camry was tainted by his illegal arrest.

To claim Fourth Amendment protection, a defendant must show a reasonable and sufficient expectation of privacy in the place to be searched.  <u>Minnesota v. Carter</u>, 525 U.S. at 87 (rejecting standing doctrine rubric in Fourth Amendment context).  As a general rule, however, an appellate court may review only the issues specifically raised and argued in an appellant's brief.  <u>United States v. Simmons</u>, 964 F.2d 763, 777 (8th Cir.) (citation omitted), <u>cert. denied</u>, 506 U.S. 1011 (1992); <u>see also</u> <u>Borough v. Duluth, Missabe & Iron Range Ry. Co.</u>, 762 F.2d 66, 68 (8th Cir. 1985) (determining that issue not raised on appeal is abandoned).

The Government does not argue that Chevalier cannot claim Fourth Amendment protection for Reinholz's Toyota Camry because she lacks a sufficient and reasonable expectation of privacy in his Toyota Camry.  The Government has waived that claim because it failed to raise the issue on appeal.  Therefore, we will consider both Reinholz's and Chevalier's motions to suppress the evidence gathered from Reinholz's Toyota Camry.

The police may conduct a search without a warrant and without probable cause if the suspect voluntarily consents to the search.  <u>United States v. Matlock</u>, 415 U.S.

164, 171 (1974); see also Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The burden is on the Government to show by a preponderance of the evidence that, under the totality of the circumstances, the defendant voluntarily consented. Id.; see also United States v. Severe, 29 F.3d 444, 446 (8th Cir. 1994), cert. denied, 513 U.S. 1096 (1995). We consider the following characteristics of the individual to determine whether their consent was truly voluntary: age, intelligence, intoxication, advice of Miranda rights, and previous arrests. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990) (listing factors). We also consider the following characteristics of the environment in which the individual's consent was given to determine whether their consent was truly voluntary: length of detention, threats and misrepresentations by police, whether the individual is in custody or under arrest, whether it is a public or private place, and the suspect's contemporaneous objections and representations. Id. We review the district court's determination that Reinholz's consent was not sufficiently an act of free will to purge the taint of his illegal arrest for clear error. United States v. Hathcock, 103 F.3d 715, 720 (8th Cir.) (reviewing for clear error), cert. denied, 521 U.S. 1127 (1997); see also Chaidez, 906 F.2d at 380-81.

We believe that the district court did not clearly err when it determined that Reinholz's consent to search his Toyota Camry was not voluntary. Reinholz's consent to search his Toyota Camry was not voluntary because it followed from his illegal arrest and no intervening events purged the taint of his illegal arrest. The district court found that Reinholz was illegally arrested in his employer's parking lot, he stood spread eagle, patted down, handcuffed, and placed in an unmarked police car. Police officers drove him twenty-five minutes through rush-hour traffic to a junior high school parking lot two blocks from his residence. Reinholz was upset, he questioned the purpose of his detainment, he expressed concern for his partner, Margaret Chevalier, and he made several statements. The officers were not forthcoming and they did not advise Reinholz of his Miranda rights until after they reached the junior high school parking lot. Reinholz had no previous arrests. When the officers initially asked Reinholz if they could search his Toyota Camry, he orally consented. Reinholz refused to sign a

consent form, however, that explained his right to deny permission to search the car. We have examined the totality of the circumstances surrounding Reinholz's consent and we believe that the district court did not clearly err when it determined that Reinholz's consent followed from his illegal arrest and that it should be excluded because no intervening event purged the taint of the illegal arrest. Therefore, we hold that the district court did not err when it granted Reinholz's and Chevalier's motions to suppress evidence seized from the search of his Toyota Camry.

## IV.    CONCLUSION

We hold that the district court erred when it granted Reinholz's and Chevalier's motions to suppress the evidence obtained by the Government as a result of the search of their residence and when it granted Reinholz's and Chevalier's motions to suppress the evidence obtained by the Government as a result of the search of the Honda Prelude. We hold that the district court did not err when it determined that Officers Podany and Hancock illegally arrested Reinholz, when it granted Reinholz's motion to suppress his post-arrest statements to police, and when it granted Reinholz's and Chevalier's motions to suppress evidence seized from the search of Reinholz's Toyota Camry.

Accordingly, we reverse the district court's order granting Reinholz's and Chevalier's motions to suppress evidence from the residence and the Honda Prelude. We affirm the district court's order granting Reinholz's motion to suppress with respect to his post-arrest statements and Reinholz's and Chevalier's motions to suppress evidence gathered from the search of Reinholz's Toyota Camry. We remand the case to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.