# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-2568

_____

United States of America,       \*

                                         \*

      Plaintiff - Appellee,     \*

                                         \* Appeal from the United States

v.                                    \* District Court for the

                                         \* Southern District of Iowa.

Rafael DeLazaro,          \*

                                         \* [UNPUBLISHED]

      Defendant - Appellant.    \*

_____

Submitted: January 14, 2010
Filed: February 11, 2011

_____

Before LOKEN,[1] Chief Judge, JOHN R. GIBSON,[2] and WOLLMAN, Circuit Judges.

_____

PER CURIAM.

Rafael DeLazaro was convicted of one count of conspiring to distribute at least five kilograms of cocaine. See 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(ii). He appeals, contending that his conviction should be reversed because it was based on

_____

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2]The Honorable John R. Gibson retired January 26, 2011. This opinion is consistent with his vote at the panel's conference following oral argument on January 14, 2010.

evidence obtained on the basis of a constitutionally inadequate search warrant. He also argues that there was insufficient evidence to sustain the conviction and that the district court[3] erred in admitting evidence of prior bad acts. We affirm.

In the summer of 2007, law enforcement began investigating a cocaine distribution ring in Ottumwa, Iowa. Law enforcement focused their investigation on Bill Edwards and his brother, James, and two bars that Bill owned. The investigation included the use of confidential informants, controlled buys, surveillance, and digital recordings of some of the controlled buys. The investigation spanned a one-year period and ultimately resulted in an application for search warrants for twelve locations, including DeLazaro's residence, and arrest warrants for DeLazaro and nine others. All the defendants except DeLazaro pleaded guilty before trial and several testified under plea agreements at DeLazaro's trial. Following a three-day trial, DeLazaro was convicted of conspiracy to distribute at least five kilograms of cocaine and sentenced to 168 months' imprisonment and five years of supervised release. He now appeals the conviction.

I.

DeLazaro filed a motion to suppress evidence obtained from the July 18, 2008, search of his home. He characterized the affidavit in support of the warrant as being intentionally and recklessly false and misleading, warranting suppression under Franks v. Delaware, 438 U.S. 154 (1978). Following a hearing, the district court denied the motion, concluding that no Franks violation had occurred. United States v. DeLazaro, No. 4:08-CR-99, slip op. at 5-8 (S.D. Iowa Jan. 9, 2009).

---

[3]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

In support of his argument that the district court erred in denying the motion, DeLazaro directs us to information supplied by two confidential informants, Adam McKinney and Mario Gadberry, which he characterizes as false and misleading. McKinney was a bouncer at the Dugout Bar, one of the bars owned by Bill Edwards, who agreed to supply information and participate in controlled buys of cocaine for law enforcement.

The affidavit submitted in support of the application for the warrant was prepared by a Drug Enforcement Administration special agent. It states that on May 13, 2008, DeLazaro met with McKinney at the Dugout Bar, where "DeLazaro said the price for an ounce of cocaine would be one thousand dollars ($1,000) the next day if [McKinney] was interested." DeLazaro states that the recorded conversation of this transaction does not corroborate this statement and in fact shows its falsity, as the recorded conversation was between McKinney and two females. The affidavit also states that on June 17, 2008, McKinney purchased approximately 30.7 grams of cocaine from DeLazaro at his residence and that McKinney agreed to record this transaction. DeLazaro points out that the recording of the transaction referred to in the affidavit makes no mention of drugs or cocaine. DeLazaro argues that the government's failure to inform the magistrate judge that the recordings did not contain any reference to drugs or cocaine constituted an intentional omission warranting reversal. Finally, DeLazaro states that the special agent omitted the fact that one of the confidential sources he named in the affidavit was the above-described Mario Gadberry. Not only did law enforcement know that Gadberry had been dishonest in providing information to law enforcement, the affidavit itself stated that Gadberry had lied to law enforcement.

When considering the denial of a motion to suppress, we review the factual findings of the district court for clear error and its conclusions of law de novo. United States v. Reinholz, 245 F.3d 765, 773 (8th Cir. 2001). A search warrant is constitutionally inadequate when the affidavit which formed the basis for the

determination of probable cause contains "false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." Id. at 774. To prevail on a Franks claim, a defendant must show that: (1) a law enforcement officer knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) without the false statement, the affidavit would not have established probable cause. Id. With respect to omissions, a defendant must show that law enforcement omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading and (2) with the omitted information included, the affidavit would not have been sufficient to support a finding of probable cause. United States v. Jacobs, 986 F.2d 1231, 1234 (8th Cir. 1993). An inference of recklessness may be inferred "only when the material omitted would have been 'clearly critical' to the finding of probable cause." United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir. 1995) (quoting United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986)).

The government concedes that DeLazaro's voice cannot be heard on the recording of the May 13, 2008, controlled buy and that the recording of the June 17, 2008, controlled buy does not contain any reference to drugs or cocaine. Indeed, the special agent who prepared the affidavit testified that he did not listen to all of the tapes of the controlled buys. However, neither of these omissions constitutes a Franks violation. For one thing, the special agent was not aware that the tapes did not corroborate the informant's description of the transaction, so any omission could not have been intentional. DeLazaro characterizes the agent's failure to listen to all of the tapes as negligent, but negligence does not meet the reckless or intentional standard necessary to prove a Franks violation. See Reinholz, 245 F.3d at 775. Moreover, the evidence established a plausible explanation for any discrepancies between the tapes and the descriptions of the controlled buys. There was testimony that the recording of the May transaction took place in the Dugout Bar and that the background noise made it very difficult to hear the tape at all. Beyond that, there was testimony that recordings of drug transactions commonly fail to corroborate an informant's

description of the transaction because drug traffickers are familiar with law enforcement tactics and will sometimes conduct drug transactions by using code words or no words at all.

Although the recordings do not corroborate McKinney's descriptions of the controlled buys, other evidence does. Law enforcement officers waited outside the bar and the house and searched McKinney both before and after his dealings with DeLazaro. DeLazaro offers no other explanation for the source of the cocaine recovered from McKinney. See United States v. Watson, 952 F.2d 982, 989 (8th Cir. 1991) (fact that defendant's voice was not heard in the tape of controlled buys does not compel a rational juror to disbelieve law enforcement testimony regarding defendant's involvement). Thus, even if the affidavit had stated that the recordings did not record DeLazaro's voice or contain a reference to drugs, there is other evidence in the affidavit to support a finding of probable cause.[4] That being the case, the omitted material was perforce not "clearly critical to the finding of probable cause," and thus the district court did not err in denying the motion to suppress.

## II.

DeLazaro next contends that the district court erred in denying his motion for judgment of acquittal. He contends that acquittal was appropriate because the evidence against him "consisted almost entirely of post-arrest accomplice testimony."

We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Reddest, 512 F.3d 1067, 1069-70 (8th Cir. 2008). "We will overturn the verdict of a

[4]This other evidence similarly forecloses DeLazaro's argument concerning the government's failure to disclose the questionable reliability of information received from Mario Gadberry. See Reivich, 793 F.2d at 962-63.

-5-

jury only in rare cases," and DeLazaro must show that no reasonable jury could have found that he was guilty beyond a reasonable doubt. United States v. Lee, 356 F.3d 831, 836 (8th Cir. 2003).

While recognizing that this court does not weigh evidence or judge the credibility of witnesses, DeLazaro reminds us that we must evaluate the evidence to ensure that there is sufficient evidence to prove all the elements of the crime charged beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 313-20 (1979). He points out that much of the testimony against him came from witnesses testifying pursuant to plea agreements and that some of their testimony was inconsistent.

Although DeLazaro identifies some minor inconsistencies in the testimony of the cooperating witnesses, they are insufficient to undermine the jury's finding that DeLazaro participated in a conspiracy to distribute cocaine. "Testimony does not become legally unsubstantial because the witness stands to gain by lying; the defendant is entitled to cross-examine such witnesses to expose their motivations, and it is up to the jury to decide whether the witness is telling the truth despite incentives to lie." United States v. Crenshaw, 359 F.3d 977, 988 (8th Cir. 2004).

The testimony against DeLazaro was substantial. In addition to the two controlled buys, there was testimony that DeLazaro introduced Mario Gadberry to the cocaine ring and showed him how to use inositol[5] to cut or adulterate the cocaine for resale. David Horvath testified that DeLazaro provided cocaine to Jason Sexton and Debbie Johnson for distribution and that he had bought cocaine directly from DeLazaro "more than a dozen" times. DeLazaro admitted that his house had a surveillance camera on the front door and he did not deny that he had obtained a cell

---

[5]There was evidence that the cocaine seized in the controlled buys also contained inosital, a Vitamin B derivative, and that dealers will sometimes mix cocaine with inosital. There was additional testimony that Delazaro purchased inosital from the GNC store in Ottumwa.

phone under a fictitious name -- all items associated with the drug trade and circumstantial evidence supporting the jury's verdict. See Lee, 356 F.3d at 837 (considering presence of drug-related equipment, including a surveillance camera, as support for jury verdict).

That DeLazaro's voice cannot be heard on the recordings of the controlled buys does not compel the conclusion that his conviction is not supported by substantial evidence. See Watson, 952 F.2d at 988-89. The jury was free to consider any inconsistencies in the evidence and evaluate the motivation and the credibility of the witnesses. "We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Coleman, 525 F.3d 665, 666 (8th Cir. 2008) (citation omitted). The district court did not err in denying DeLazaro's motion for judgment of acquittal.

III.

Finally, DeLazaro argues that the district court erred in admitting evidence of prior bad acts. Specifically, DeLazaro complains about the admission of evidence about previous drug sales in the Chicago area, gang affiliation, and felony convictions. DeLazaro contends that this evidence had no bearing on the issues in the case and was improperly admitted for the purpose of proving his propensity to commit criminal acts. See Fed. R. Evid. 404(b).

We review the district court's decision to admit evidence of other crimes, wrongs, or acts for abuse of discretion. United States v. Gaddy, 532 F.3d 783, 789 (8th Cir. 2008). Evidence of prior bad acts "is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, unless the party seeking its exclusion can demonstrate that it serves only to prove the defendant's criminal disposition." United States v. Smith, 383 F.3d 700, 706 (8th Cir.

2004).  Such evidence "is admissible if it is relevant to a material issue, the other crimes are similar and reasonably close in time to the charged crime, the evidence is sufficient to support a jury's finding that the defendant committed the other crimes, and the probative value of the evidence is not substantially outweighed by unfair prejudice. Id.

Bill Edwards testified that DeLazaro was selling cocaine in Chicago, and David Horvath testified that he "observed a transaction of cocaine" between Bill Edwards and DeLazaro in Chicago.  DeLazaro contends that the district court abused its discretion in admitting this evidence, as it describes events not reasonably close in time to the alleged conspiracy, lacks evidentiary support, and is more prejudicial than probative. DeLazaro explains that he did not  move to Ottumwa until August of 2006, so these transactions had to have taken place at least a year before the charged conspiracy began.

We conclude that the district court did not abuse its discretion in admitting the evidence of the Chicago drug sales.  The evidence was relevant to DeLazaro's motive and probative of his intent to distribute, see United States v. Harris, 352 F. 3d 362, 365 (8th Cir. 2003), and was well within the permissible time boundaries this court has articulated.  See, e.g., United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000).

Likewise, there was no abuse of discretion in admitting evidence about DeLazaro's gang association or criminal convictions.  Bill Edwards's testimony that he and DeLazaro were in the same street gang was probative of the relationship between two conspirators and was not offered to prove guilt by association with a gang or unduly prejudicial.  See United States v. Johnson, 28 F.3d 1487, 1497-98 (8th Cir. 1994).  Finally, DeLazaro failed to object to the admission of, and indeed himself testified regarding his three felony convictions.  In any event, we are convinced that in light of the overwhelming evidence against him, any error in admitting the

challenged evidence would have been harmless.  <u>United States v. DeAngelo</u>, 13 F.3d 1228, 1233 (8th Cir. 1994).

The conviction is affirmed.

_____