UNITED STATES of America, Plaintiff,

v.

**Shawn Leo BARTH, et al., Defendants.**

No. C1–03–046.

United States District Court, D. North Dakota, Southwestern Division.

Oct. 30, 2003.

1024

Orell D. Schmitz, Schmitz Moench and Schmidt, Ross H. Espeseth, LaRoy Baird, P.C., Wayne D. Goter, Timothy Q. Purdon, Michael Ray Hoffman, Bismarck, ND, Benjamin C. Pulkrabek, Pulkrabek Law Firm, Mandan, ND, for defendants.

Jeannette Glatt, Bismarck, ND, pro se.

## ORDER DENYING DEFENDANT BARTH'S MOTION TO SUPPRESS

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress evidence seized by law enforcement officers from a Chevrolet pickup, North Dakota license number DAG 643, on March 25, 2003. A hearing on the motion was held on October 27, 2003. For the reasons outlined below, the motion is denied.

### I. BACKGROUND

On the evening of March 25, 2003, state district court Judge Bruce A. Romanick issued two search warrants authorizing law enforcement officers to search a house, outbuildings, and a utility trailer located at 2788 39th Avenue SW, Center, North Dakota, for the following: drug paraphernalia, methamphetamine, marijuana, currency, and indicia of drug trafficking. Additionally, Judge Romanick authorized a night search due to the lateness of the hour, and for fear the controlled substances would be removed the following morning. His finding of probable cause to issue the warrants was based upon Bismarck Police Detective Kenen Kaizer's sworn testimony that he had received information that the defendant, Shawn Barth, had hidden drugs in outbuildings and a utility trailer located on a farmstead at the aforementioned address that Barth had been renting.

The warrants were executed on March 25, 2003, at approximately 10:45 p.m. Detective Kaizer secured the scene with the assistance of members of the Metro Area

Narcotics Task Force, the South Sakakawea Narcotics Task Force, and the Oliver County Sheriff's Department. The evidence has revealed that there were approximately 20–30 law enforcement officers on location. Task force members then searched the house (with the assistance of a certified drug detecting dog named "Shadow" that was handled by Detective Roger Becker) and utility trailer, and found drug paraphernalia, a .32 caliber revolver, several bags of marijuana, and a plastic bag containing white powder residue.

Parked on the lawn in front of the house was a white limousine. Officer Paul Olson of the Bismarck Police Department approached the limousine to look for anyone inside the vehicle. Officer Olson opened the back door of the limousine and peered inside to confirm that the limousine was empty. Observing what he recognized as the scent of marijuana and two baggies in the back window of the limousine, he sought out the assistance of Detective Becker and his drug dog. Officer Becker presented the limousine to his drug detecting dog. When the dog gave a positive response to the vehicle, Bismarck Police Officers Paul Olson and Troy Schaner searched the limousine and found drug paraphernalia.

Meanwhile, Deputies Robert Fontenot and Eric Harmel approached a Chevrolet pickup, North Dakota license number DAG 643, that was parked on the side of the house. Using their flashlights to look into the pickup's window, the deputies observed a bandana adorned with drawings of marijuana leaves lying in an open dashboard compartment. *See* Government Ex. 4. Deputy Harmel entered the pickup and retrieved the bandana. Wrapped up inside the bandana was a plastic bag containing approximately one ounce of marijuana. Detective Becker did not remove the bandana and marijuana from the vehicle. The record reveals that upon learning of this discovery, Deputies Fontenot and Harmel were informed by several officers in the vicinity (Detective Becker, Officer Paul Olson, and Lieutenant Haas) that the search warrants *did not* extend to the Chevy pickup. Thereafter, Deputy Harmel responded by returning the bandana and marijuana to the dashboard compartment in the pickup and photographs were taken of the contraband. No further search of the pickup took place at that time. Surprisingly, neither Deputy Fontenot nor Deputy Harmel had reviewed the search warrants beforehand but both officers testified that they believed the warrants covered the vehicles.

The Chevy pickup was subsequently presented to the drug detecting dog and the dog gave a positive indication for the presence of drugs. Following the dog's alert, officers began searching the pickup, and found several plastic bags containing methamphetamine and marijuana under the passenger-side seat. Later that evening, the dog was presented to a third vehicle on the premises, a GMC truck. Again, the dog alerted. However, a search of the GMC truck yielded no illegal contraband.

On July 9, 2003, Barth was charged by Indictment with the following: (1) conspiracy to possess with intent to distribute and distribute methamphetamine; (2) possession of methamphetamine with intent to distribute; (3) distribution of methamphetamine; (4) possession of marijuana with intent to distribute; (5) possession of a firearm in furtherance of a drug trafficking crime; and (6) felon in possession of a firearm and ammunition.

On October 1, 2003, Barth filed a Motion to Suppress the evidence seized from the Chevy pickup, contending that the search of the Chevy pickup was invalid because it was separate and distinct from

the property described in the search warrants.[1] In addition, Barth asserted that the deputies' attempt to return the contraband and then have a drug detecting dog approach the pickup did not save the search.

The Government resists the Defendant's motion and has contended that the search of the Chevy pickup was authorized by virtue of the fact that it was located on the property described in the warrant. The Government also contends that the search of the Chevy pickup fell within the automobile exception to the warrant requirement and, in any event, the evidence recovered from the pickup is admissible under the inevitable-discovery exception to the exclusionary rule. According to the Government, the drug detecting dog was being led around to all of the vehicles located on the premises and, therefore, would have arrived at and alerted to the Chevy pickup eventually.

## II. *LEGAL DISCUSSION*

 The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. The general rule is that the government must secure a warrant before conducting a search. *United States v. Alberts,* 721 F.2d 636, 638 (8th Cir.1983). "The authority to search

granted by any warrant is limited to the specific places described in it and does not extend to additional or different places." *United States v. Pennington,* 287 F.3d 739, 744 (8th Cir.2002)(quoting *United States v. Alberts,* 721 F.2d 636, 639 (8th Cir.1983)). When an individual's home or vehicle is searched without a warrant, the government bears the burden of justifying the search. *United States v. Selberg,* 630 F.2d 1292, 1294 (8th Cir.1980). This justification must be made by way of evidence proving the existence of an exception to the warrant requirement. *See United States v. Riedesel,* 987 F.2d at 1383, 1388 (8th Cir.1993); *United States v. Bruton,* 647 F.2d 818, 822 (8th Cir.1981).

## A. *THE SEARCH WARRANTS*

In this case, the search warrants issued by the state court authorized law enforcement officers to search the property named in the warrants; namely, the house, outbuildings, and utility trailer, for the property specified, i.e., drugs, drug paraphernalia, currency, and indicia of drug trafficking. Conspicuously absent from the warrants was the explicit authorization to search any motor vehicles. Thus, on their face, the search warrants authorized a search of specific buildings but the warrants did not expressly authorize a search of the Chevy pickup. Nevertheless, the

1. There was no evidence presented by either party to establish ownership of the Chevy pickup. It is well-settled that "the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. Mendoza,* 281 F.3d 712, 715 (8th Cir.2002). The ownership, possession and/or control of the area searched or item seized is relevant to this analysis as Fourth Amendment rights are personal and may not be asserted vicariously. *See United States v. Green,* 275 F.3d 694, 698 (8th Cir.2002); *United States v. McCaster,* 193 F.3d 930, 933 (8th Cir.1999).

The United States Supreme Court, has explicitly determined that a person has no reasonable expectation of privacy in an automobile belonging to another. *Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The facts are sketchy at best as to whether the defendant, Shawn Barth, had a possessory or privacy interest in the Chevy pickup at issue. The Defendant provided no evidence that he either owned or used the pickup parked near his residence. It is clear that the person challenging the search (Barth) has the burden of establishing standing in this matter. That burden has not been met. Nevertheless, the Court will address the merits of the challenge to the search.

Government contends that the warrants extended to all of the vehicles located on Barth's farmstead. The Court disagrees.

In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the United States Supreme Court held that a lawful search of fixed premises generally extends to every part of the premises in which the object of the search may be found, notwithstanding the fact that separate acts of opening or entry may be required to complete the search. The Supreme Court held that "a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." 456 U.S. 798, 821, 102 S.Ct. 2157. Applying *Ross* and its progeny, numerous courts have recognized that "a vehicle found on a premises is considered to be included within the scope of a warrant authorizing a search of that premises." *United States v. Reivich*, 793 F.2d 957, 963 (8th Cir.1986); see *United States v. Singer*, 970 F.2d 1414, 1417–18 (5th Cir.1992); *United States v. Gottschalk*, 915 F.2d 1459 (10th Cir.1990); *United States v. Griffin*, 827 F.2d 1108, 1115 (7th Cir.1987); *United States v. Asselin*, 775 F.2d 445 (1st Cir.1985); *United States v. Percival*, 756 F.2d 600, 612 (7th Cir.1985); *United States v. Bulgatz*, 693 F.2d 728, 730 n. 3 (8th Cir.1982)(warrant for search of house justifies search of car parked in the garage attached to the house); *United States v. Freeman*, 685 F.2d 942, 955 (5th Cir.1982)(warrant for search of premises justifies search of jeep parked on the premises); *United States v. Combs*, 468 F.2d 1390, 1392 (6th Cir.1972);

*United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir.1976). The term "premises" is defined by Black's Law Dictionary as "a house or building, along with its grounds." Black's Law Dictionary 1199 (7th ed.1999).

■ The search warrants at issue in this case bear a subtle yet distinctive difference from those at issue in the cases cited above. By definition, a search of the "premises" is more expansive than a mere search of a building in that it would encompass the building and its grounds. However, the search warrants issued by Judge Romanick only allowed for a search of specific buildings. The warrants did not expressly authorize a search of the buildings *and* the grounds or premises. It is clear that Barth's challenge to the search of the Chevy pickup would fail if the search warrants had contained a specific reference to the "premises." However, the undisputed fact remains that the search warrants incorporated no such language.[2] Moreover, while Detective Kaizer was concerned that Barth was intending to move the contraband, there is nothing in his sworn testimony wherein he anticipates the presence of any vehicles or contemplates a search of any vehicles.

It is also of importance to note that Officer Paul Olson, Detective Roger Becker, and Lieutenant Haas informed Officers Fontenot and Harmel that the search warrants did not cover the Chevy pickup. *See* Government Exhibit Nos. 1, 3 and testimony of Olson and Becker. Given the fact that at least three of the officers at the scene doubted the propriety of the search that was being conducted, it seems disin-

---

2. To accept the Government's contention and read the term "premises" into the search warrants or hold that a search of the "premises" was implicit in the language of the first warrant, would render the second warrant superfluous. If the law enforcement officers believed that a search warrant authorizing the search of the house allowed them to search the entire premises, why would a second warrant have been obtained identifying specific outbuildings and a utility trailer? Had either of the search warrants simply included language authorizing a search of the "premises", there would be virtually no legal basis to challenge the search of the vehicle.

genuous at best to now claim that the search was authorized by the search warrants.

The Court concludes that the search warrants issued by Judge Romanick did not extend to the premises and hence did not encompass the vehicles parked near Barth's residence. If authorities had sought authorization for a broader search, then it stands to reason that they could have easily drafted the search warrants with greater care. The better practice would be to include a specific reference in the search warrants to vehicles on the premises *or* to simply include a reference in the warrants to "premises" as being an identified area to search. Nevertheless, this does not end the Court's analysis as it must determine whether the search of the Chevy pickup fell within an exception to the Fourth Amendment's warrant requirement.

### B. *AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT*

▇▇▇ It is well-established that when the "scope of a search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception to the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In determining if a search without a warrant or beyond the scope of a search warrant is valid, the test to be applied is whether the search was unreasonable since only unreasonable searches are prohibited by the Fourth Amendment. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). What is reasonable cannot be determined by a rigid and fixed formula. *United States v. Rabinowitz*, 339 U.S. 56, 70, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Nor can the test be stated in rigid and absolute terms. *Harris v. United States*, 331 U.S. 145, 67 S.Ct.

1098, 91 L.Ed. 1399 (1947). In short, what is reasonable within the meaning of the Fourth Amendment depends on the facts and circumstances of each case.

▇▇▇ "As long as law enforcement officers have probable cause, they may search an automobile without a warrant under the automobile exception." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir.2000). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

▇▇▇ Deputies Fontenot and Harmel lacked the requisite probable cause when they first entered the Chevy pickup. Thus, their initial search would not fall under the automobile exception to the warrant requirement. It was permissible for Deputies Fontenot and Harmel to use their flashlights to look inside the Chevy pickup. However, the fact that they observed a bandana adorned with drawings of marijuana leaves sitting in an open compartment near the dashboard hardly qualifies as reasonable suspicion or good cause to enter the Chevy pickup and seize the bandana. Notably, neither deputy asserted that the bandana was "suspicious" or that their entry was precipitated by their observation of the bandana. Rather, they testified that their entry into the Chevy pickup was based upon their incorrect assumption that the search warrants extended to the pickup.

Nevertheless, while law enforcement officers did not have a warrant to search the Chevy pickup and their initial search was improper, the Court finds that the drugs concealed in the pickup were discovered by lawful means by virtue of the fact that the

second search did fall under the automobile exception to the warrant requirement.

When first obtaining the search warrants, Detective Kaizer expressed that time was of the essence based on his belief that Barth would be removing the alleged contraband from the farmstead the following day. *See* Transcript of Proceedings Before Judge Romanick Regarding Application for Search Warrant, pp. 10–11. Detective Kaizer's concern was substantiated by information that he had received from a James Chrisikos, an alleged friend or associate of Barth, and by news that Barth had been failing to pay his rent and that the power to his farmstead had been cut off. *Id.*, pp. 3–9. When the officers first arrived at the farmstead on the evening of March 25, 2003, the residence was dark and all power had been cut off to the farmstead. After obtaining Judge Romanick's authorization to conduct a night search, task force officers proceeded to the farmstead and utilized a drug detecting dog to aid in their authorized search of the house and outbuildings. The officers found marijuana, white powder residue, a revolver, and drug paraphernalia in these structures.

██ After assisting with the search of the residence, Officer Paul Olson approached a white limousine parked in front of the house to ensure that no one was hiding inside. His entry was necessitated because he could not see through the limousine's tinted windows. Based upon what he observed with his senses, Officer Olson requested the assistance of the drug detecting dog which at that point had just concluded its sweep of the house. Detective Roger Becker presented the drug dog to the limousine. When the dog alerted, the limousine was searched.[3] It is undisputed that when the dog alerted on the

limousine, the officers had probable cause to search the vehicle without a warrant. *United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 647 (8th Cir.1999), *cert. denied,* 528 U.S. 1161, 120 S.Ct. 1175, 145 L.Ed.2d 1083 (2000). The officers subsequently found drug paraphernalia. These discoveries, when coupled with the information that Barth was planning to move contraband from the property within the day, would have given any officer reasonable suspicion to believe that the other vehicles parked near the house may also contain drug contraband. As such, the officers had justification to run the drug detecting dog past the Chevy pickup and the GMC truck parked on the premises near the house to sniff the vehicles for drugs. *See United States v. Kou Yang,* 345 F.3d 650 (8th Cir.2003) (citing *United States v. Linkous,* 285 F.3d 716, 720 (8th Cir.2002), for the proposition that an officer's suspicion may grow as the circumstances unfold and more suspicious facts are discovered).

██ Further, once the drug detecting dog alerted, the officers had probable cause to believe that there were drugs in the Chevy pickup. *See United States v. Bloomfield,* 40 F.3d 910, 919 (8th Cir.1994) ("A dog's identification of drugs in luggage or in a car provides probable cause that drugs are present"). It is well-established that law enforcement officers may conduct a warrantless search of a vehicle as long as the officers have probable cause to believe the vehicle contains contraband or other evidence of illegal activity. *United States v. Fladten,* 230 F.3d 1083, 1085 (8th Cir. 2000); *see United States v. Bloomfield,* 40 F.3d 910, 919 (8th Cir.1994). In other words, when police have probable cause to search a vehicle, the Fourth Amendment

---

**3.** The drug dog "Shadow" was an experienced and certified canine frequently used to detect narcotics. *See* Government Ex. 7. Detective Becker had used "Shadow" in 135 searches in 2002 and testified that the dog was very reliable.

does not require a warrant. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

The Court finds that the search of the Chevy pickup falls under the automobile exception to the warrant requirement. Although not necessary, the Court will also address the Government's contention regarding the application of the inevitable-discovery doctrine.

## C. *THE INEVITABLE DISCOVERY DOCTRINE*

 "The exclusionary rule prohibits the admission of physical and testimonial evidence gathered illegally." *United States v. Reinholz*, 245 F.3d 765, 779 (8th Cir.2001). The Government contends that application of this rule is not justified and that the evidence obtained from the Chevy pickup is admissible under the inevitable-discovery doctrine.[4]

The inevitable-discovery doctrine is based upon the concept that illegally obtained evidence that is sufficiently purged of its original taint is not subject to the exclusionary rule." *United States v. Madrid*, 152 F.3d 1034, 1037 (8th Cir.1998). The challenged evidence will be considered admissible if it inevitably would have been discovered by lawful means without reference to the alleged police misconduct. *United States v. Reinholz*, 245 F.3d 765, 779 (8th Cir.2001).

 To successfully invoke the inevitable discovery doctrine, the government "must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Hammons*, 152 F.3d 1025, 1029 (8th Cir.1998); *see United States v. Madrid*, 152 F.3d 1034, 1037; *United States v. Halls*, 40 F.3d 275, 276–77 (8th Cir.1994), *cert. denied*, 514 U.S. 1076, 115 S.Ct. 1721, 131 L.Ed.2d 579 (1995); *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990).

### 1) *REASONABLE PROBABILITY OF LAWFUL DISCOVERY*

 In this case, the Court finds that the first prong of the inevitable-discovery analysis is easily satisfied. Although the officers did not have a warrant to search the Chevy pickup, there existed a reasonable probability that the illegal drugs concealed in the pickup would have been dis-

---

4. There are three exceptions to the exclusionary rule—the inevitable discovery doctrine, the independent source doctrine, and the attenuated connection doctrine. *See United States v. Reinholz*, 245 F.3d 765 (8th Cir. 2001). Under the inevitable discovery doctrine, the challenged evidence is admissible if it inevitably would have been discovered by lawful means without reference to the police misconduct. *Id.* Under the attenuated connection doctrine, the challenged evidence is admissible if the causal connection between the constitutional violation and the discovery of the evidence is so attenuated as to rid the taint. *Id.* Under the independent source doctrine, the challenged evidence is admissible if it came from a lawful source independent of the illegal conduct, such as a later lawful search wholly independent of the initial entry. *See Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Although it not been raised by either party, the Court notes that the facts may support the application of the independent source doctrine in this case. The Government can establish that the drugs found in the Chevy pickup were discovered independently from the actions undertaken by Officer Fontenot and Harmel. Specifically, the evidence discovered during Officer Fontenot and Harmel's initial entry into the Chevy pickup was also discovered in a subsequent search precipitated by the drug detecting dog's alert and conducted pursuant to the automobile exception to the warrant requirement.

covered by lawful means. The officers had obtained valid search warrants to search Barth's house, outbuildings, and a utility trailer for drugs and, thus, were justified in bringing a drug detecting dog onto the premises. When conducting their search, the officers found contraband in the house. Officer Paul Olson later entered a white limousine parked in the front lawn to ensure that it was empty and he detected the odor of marijuana and baggies in the back window which prompted him to request the presence of the drug detecting dog. When presented to the limousine, the drug dog gave a positive response for drugs. A subsequent search of the limousine corroborated the dog's response in that the officers found drug paraphernalia. The presence of contraband in Barth's home and the limousine, when coupled with other information that Barth was planning on transporting contraband from the residence the following morning, would have given the officers at the scene reasonable suspicion to run the dog past the other vehicles parked on the premises, i.e., the Chevy pickup and GMC truck.

 It is well-established that in determining whether a law enforcement officer has reasonable suspicion to search, courts focus on "the totality of the circumstances, in light of the officer's experience." *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir.1994). Courts are to give deference to the experience and expertise of law enforcement officers in determining whether certain conduct is suspicious. The United States Supreme Court has recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists. *Ornelas v. United States*, 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Although it was not expressly articulated by the deputies, the facts presented at the hearing would support the assertion that the law enforcement officers involved had a reasonable

suspicion to believe that the other vehicles parked on the premises near the house may contain illegal contraband and the officers' suspicions grew as the circumstances unfolded and more suspicious facts were discovered. *See United States v. Linkous*, 285 F.3d 716, 719 (8th Cir.2002).

In any event, Detective Becker testified that it was his general practice when executing a search warrant to present his dog to the vehicles on the premises. More important, Detective Becker testified that he was not told that Deputies Fontenot and Harmel had found marijuana in the Chevy pickup prior to the dog's alert. Thus, Detective Becker had no apparent knowledge that there were controlled substances in the Chevy pickup prior to the dog's alert and the subsequent search of the pickup.

Based upon the heightened suspicion of the presence of drugs in vehicles parked near Barth's residence, coupled with Officer Becker's statement that in the ordinary course of events his dog would have been presented to the vehicles anyway, the Court finds that drugs found under the passenger seat and elsewhere within the Chevy pickup would have been discovered by lawful means regardless of the actions of Deputy Fontenot or Deputy Harmel. It is clear that once the drug dog alerted on the Chevy pickup, the officers had probable cause to search the pickup. *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir.1999), *cert. denied*, 528 U.S. 1161, 120 S.Ct. 1175, 145 L.Ed.2d 1083 (2000).

### 2) *SUBSTANTIAL, ALTERNATIVE LINE OF INVESTIGATION*

 The second prong of the inevitable-discovery analysis is also satisfied. It is clear from the testimony presented at the hearing, and from the reports of the law enforcement officers, that once Depu-

ties Fontenot and Harmel were told that the search warrants did not extend to the vehicles, they terminated their search and immediately sought out Detective Becker and his drug detecting dog. At this point in time, Deputies Fontenot and Harmel had examined the bandana observed through the pickup's window but had not looked elsewhere in the pickup. Therefore, the deputies had no knowledge of heat-sealed bags of marijuana and methamphetamine stashed under the passenger seat prior to the dog's presentation to the pickup. Just as the officer in *United States v. Hammons*, Deputy Fontenot's action of seeking out Detective Becker and asking him to bring the dog over to the Chevy pickup initiated an alternative line of investigation. *See United States v. Hammons*, 152 F.3d 1025, 1029 (8th Cir. 1998). Accordingly, the Court finds that Deputy Fontenot decision to get Becker's assistance and the use of the drug dog satisfies the second prong of the inevitable-discovery doctrine.

▬ In summary, the record clearly establishes that 1) there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of the initial entry into the pickup by Deputies Fontenot and Harmel, and 2) that the Government was actively pursuing a substantial, alternative line of investigation at the time. As such, the evidence obtained from the Chevy pickup is admissible under the inevitable-discovery doctrine.

## III. CONCLUSION

The Court concludes that the search warrants issued by Judge Romanick on March 25, 2003, clearly did not extend to the vehicles parked near and next to the house described in the warrants. Nevertheless, the Court finds that the exclusion of evidence seized from the Chevy truck is not warranted under the circumstances.

The law enforcement officers had a reasonable suspicion to run a drug detecting dog past the Chevy pickup. When the dog alerted to the Chevy pickup, the officers had probable cause to conduct a warrantless search of the pickup. Any reasonable officer would believe that the vehicle likely contained contraband or other evidence of drug activity under the circumstances. In this case, the officers' suspicion of criminal activity grew as the circumstances unfolded that evening and more suspicious facts were uncovered. *See United States v. Linkous*, 285 F.3d 716, 719 (8th Cir.2002). The resulting search fell within the automobile exception to the warrant requirement.

By all accounts, Detective Becker had every intent to run the drug detecting dog past the remaining two vehicles (the Chevy pickup and the GMC truck) to sniff for drugs once contraband was discovered in the limousine regardless of the actions undertaken by Officers Fontenot and Harmel, thus purging any taint attributable to their initial entry into the Chevy pickup. The Court finds that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of any police misconduct. In addition, the law enforcement officers were acting in good faith and were actively pursuing a substantial, alternative line of investigation at the time Officers Fontenot and Harmel first entered the Chevy pickup. Specifically, the evidence supports a finding that Detective Becker was planning on taking Shadow, the drug dog, to other vehicles on the premises to sniff for controlled substances at some time that evening. The drug dog's alert to the Chevy pickup was not precipitated by the actions of Officer Fontent and Harmel and would have occurred in the absence of such actions.

Accordingly, the Court **DENIES** Barth's Motion to Suppress (Docket No. 75).

**IT IS SO ORDERED.**