**UNITED STATES of America,**
**Plaintiff,**

v.

**Loren Michael LONGIE, Defendant.**

**No. C2–04–149.**

United States District Court,
D. North Dakota,
Northeastern Division.

Jan. 31, 2005.

Bradley Allen Meyer, Zimney Foster Johnson Dittus & Flaten, Grand Forks, ND, for Defendant.

Brett M. Shasky, U.S. Attorney's Office, Fargo, ND, for Plaintiff.

Memorandum Opinion and Order Granting Motion to Suppress Evidence

ERICKSON, District Judge.

Before the Court is a motion to suppress evidence seized outside the scope of the search warrant. Defendant also argues the search warrant was not issued in compliance with Fed.R.Civ.P. 41(a) and the evidence obtained during the search should be suppressed as the agents acted with reckless disregard for the requirements of the rule (doc # 13). The United States has filed a brief in opposition. A hearing was held on January 5, 2005, during which these issues were taken under advisement. This decision follows.

## SUMMARY OF DECISION

The search warrant specifically described the house and authorized a search of only the house; therefore, under the terms of the warrant, a search of the shed exceeded the scope of the warrant. Although one agent believed a search of the shed was authorized because it was part of the curtilage, the Court finds there was no evidence that the shed was used for activities and privacies of life which would intimately tie the shed to the house and make it part of the curtilage. Thus, the Court finds the shed was outside the curtilage of the house. Finally, while the open fields doctrine allows observations of what is in plain view outside the curtilage of a house, it does not simply justify a warrantless entry of man-made enclosures found in an open field. Because the agents exceeded the scope of the warrant, the justification for searching the shed was erroneous, and there was a difference of opinion regarding whether the shed could be searched, the agents could have easily secured the shed and obtained a warrant prior to entering it. For these reasons, Defendant's motion to suppress evidence is GRANTED. This

conclusion renders Defendant's second argument for suppression of the same evidence moot.

## BACKGROUND

On May 24, 2004, an assault was alleged to have occurred in the Myra/Ashly Hunt residence on the Spirit Lake Sioux Indian Reservation. The alleged suspect in the assault was Michael Longie. Following the assault, several witnesses stated they heard Longie make a comment to the effect of, "Where's my gun?" and "Where's my shells?" Additionally, three witnesses told law enforcement officers that they observed Longie holding what they described as being a rifle.

On May 26, 2004, Special Agent Bentley GreyBear of the Bureau of Indian Affairs received a faxed copy of a judgment in a criminal case regarding Longie. The judgment noted Longie was convicted of burglary in 1997 and thus was prohibited from possessing firearms. Agent Grey-Bear applied for and was granted a search warrant by the Spirit Lake Tribal Court. The search warrant authorized a search for firearm(s) and ammunition at the following location:

> Myra/Ashley Hunt residence, unit 436, 4175 72nd Avenue North East, Fort Totten, N.D. Three bedrooms, wooden frame structure over a cement basement, peach in color.

On May 26, 2004, a search was executed by Special Agent W. Jay McCrary of the Bureau of Alcohol, Tobacco, Firearms and Explosives, BIA Special Agent GreyBear, and other local officers. No evidence was seized from inside the house. However, the investigation report indicates: "[i]n an abandoned, dilapidated shed, approximately 60 yards to the west of the residence, S/A McCrary discovered an Armamex, .22 caliber semi-automatic rifle, imported by Odin, Alexandria, VA, stamped with 'Hecho in Mexico' and an eagle head, and S/N 4096." Ashley Hunt told law enforcement officers that the shed belongs to her grandmother, who lives in a location unknown to Hunt, and was not a part of her residence. Besides some metal poles, no other items were located in this shed.

Defendant was indicted for possession of a firearm by a convicted felon. Defendant moves to suppress evidence obtained during the search of the shed because: (1) the search exceeded the scope of the warrant; and (2) the agents acted in reckless disregard of Fed.R.Crim P. 41(a) when they did not obtain a search warrant from a federal judge or state court judge.

During the suppression hearing, Special Agent GreyBear testified that he prepared the affidavit for the search warrant with the assistance of Special Agent McCrary and he obtained the search warrant from a tribal judge. Special Agent GreyBear further testified that he did not know if the shed was part of the residence, he did not have permission to look in the shed, and that he did not believe he had authority to search the shed under the warrant. In contrast, Special Agent McCrary testified he believed the shed was considered part of the property and under the search warrant he could search the residence and the curtilage. Special Agent McCrary also stated that although he thought the shed was within the curtilage, if it was not within the curtilage then it could be searched under the open fields doctrine.

## ANALYSIS

### 1. Search of the Shed

#### A. Scope of the Warrant

■ The Fourth Amendment provides that warrants must "particularly describe the place to be searched, and the persons or things to be seized." *United States v. Pennington,* 287 F.3d 739, 744 (8th Cir. 2002). This particularity requirement defines the scope of a search and seizure and

safeguards against wide-ranging exploratory searches the Framers intended to prohibit. *Id.* (quoting *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)). "The authority to search granted by any warrant is 'limited to the specific places described in it and does not extend to additional or different places.'" *Id.* (quoting *United States v. Alberts,* 721 F.2d 636, 639 (8th Cir.1983)).

In this case, the search warrant authorized the search of the Myra/Ashley Hunt residence, unit 436, 4175 72nd Ave N.E. Had the warrant described the place to be searched as "the premises" or "the property" at 4175 72nd Ave. N.E., the warrant would have likely authorized a search of any buildings found on the premises for evidence. *Pennington,* 287 F.3d at 744. Instead, the warrant stated a physical address and described a house. When a warrant specifically mentions certain structures, it "authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them." *United States v. Schroeder,* 129 F.3d 439, 441–42 (8th Cir.1997).

The language used in the warrant in this case specifically authorized a search of the residence, not the premises or property. The investigation report indicates the shed was some 60 yards away from the residence; thus, noticeably separate from the residence. Therefore, the officers exceeded the scope of the warrant when they searched the shed some 60 yards away from the residence. If the officers wanted to search the premises, they could have specified that in their search warrant application. Searching anything but those areas specified in the search warrant exceeded the scope of the warrant. See *United States v. Barth,* 288 F.Supp.2d 1021, 1027 (D.N.D.2003) (finding the search warrants did not extend to the premises and hence did not encompass

vehicles parked near the residence); *People v. Caruso,* 174 A.D.2d 1051, 572 N.Y.S.2d 216 (N.Y.App.Div.1991) (holding the search of a shed at defendant's residence exceeded the authorized scope of the warrant).

### B.   Curtilage

■ The Fourth Amendment protects a home and its curtilage from warrantless searches. *United States v. Dunn,* 480 U.S. 294, 300–04, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). "Curtilage" has been defined as "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In contrast, Fourth Amendment protections do no extend to "open fields" as no expectation of privacy legitimately attaches to open fields. *Id.* Nevertheless, the open fields doctrine only allows a search of what is in plain view in the open field. *United States v. Pennington,* 287 F.3d 739, 745 (8th Cir.2002). In Dunn, the Supreme Court found no constitutional violation when the officers looked through the window of a barn that was outside the curtilage, but specifically emphasized that the officers never entered the barn until a warrant was obtained. 480 U.S. at 304–05, 107 S.Ct. 1134.

In this case, when Special Agent McCrary was asked if he believed the shed was an area that could be searched under the warrant, he responded:

It was fairly clear that it was connected to the house in the sense that it's the only other standing structure. There's a path from it to the house. In fact Agent GreyBear and I kind of discussed whether or not it was just open fields or whether it was indeed part of the house—part of the, correct, curtilage.

When further questioned, Special Agent McCrary testified he believed it was fairly

clear that the shed is connected to the residence and the shed fell within the curtilage of the residence. On the other hand, BIA Agent GreyBear testified he did not know if the shed was part of the residence and he did not believe the officers could look in the shed.

In defining the extent of a home's curtilage, the United States Supreme Court has identified four factors for a court to consider: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *Id.* Applying these factors to the shed, objective evidence indicates that the shed was not within the curtilage of the house. The shed was located approximately 60 yards from the house. It was run-down and it no longer had a door or windows. Further, the shed was not surrounded by a fence and there were no indicators that trespassing was not welcome. The occupants of the residence had not taken any steps to prevent casual onlookers from viewing inside the shed. Moreover, no other items of value were located in the shed. In fact, Special Agent McCrary testified that besides the firearm, the only other items in the shed were some metal poles.

In this case, there was no evidence that the shed was used for activities and privacies of life requiring Fourth Amendment protection. The only evidence connecting the shed to the house was the testimony by Special Agent McCrary that there was a path in the lawn between the house and the shed. If, however, the shed was part of the curtilage, as the agent believed, a new warrant should have been obtained to authorize a search of the shed since the warrant authorizing the agents to be on the property only permitted a search of the house. Nonetheless, based on all of the evidence, the Court finds the shed was not intimately tied to the house and Defendant had no reasonable expectation of privacy in the shed. Therefore, the shed was outside the curtilage of the house.

■ The United States suggests that even if the shed was outside the scope of the warrant, the search falls within the open fields doctrine. Although the open fields doctrine allows a search of what is in plain view in the open field, "[i]t does not justify a warrantless search of a man-made enclosure found in an open field." *Pennington*, 287 F.3d at 745. While Defendant had no reasonable expectation of privacy in the shed and the officers could peer into the windows of the shed, they could have sealed the area and applied for a second warrant prior to entering the shed. *Id.* (stating the officers who discovered an entryway to an underground bunker would have been well-advised to seal the surrounding area and apply for a second warrant); see also *Dunn*, 480 U.S. at 304–05, 107 S.Ct. 1134 (noting that the officers looked through the windows of a barn that was outside the curtilage, but did not enter until they obtained a warrant).

Based on all the evidence, the Court finds the warrantless search of the shed is a close issue under the open fields doctrine. However, the Court's findings can be summarized as follows: (1) the agents had it within their power to get one search warrant authorizing a search of the entire "premises" or "property," which would include the shed, but they obtained a search warrant for only the house; (2) the agents executing the search warrant differed about whether a search of the shed was lawful—one agent thought the shed could not be searched and the other agent thought the shed could be searched because it was clearly part of the curtilage of the house; (3) in order to lawfully search the shed under the agent's reasoning—

that is, the shed was within the curtilage of the residence—a second warrant still would have been required since a search of the shed exceeded the particular terms of this warrant; (4) despite the agent's belief, the shed was clearly not connected to the residence and not part of the curtilage; and (5) while the United States suggests a search of the shed would still be valid under the open fields doctrine, and the Court concedes the agents could peer into the windows of a shed in an open field, the agents could have easily secured the shed and applied for a second warrant prior to their warrantless entry of the shed, especially when there was concern about whether they could search the shed under the warrant they had. Consequently, suppression of evidence seized from the shed is warranted in this case.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress evidence seized from the shed is GRANTED. Defendant's alternative argument for suppression of the same evidence is thereby rendered moot.

IT IS SO ORDERED.