# Illinois Official Reports

## Appellate Court

---

### *People v. Valle*, 2015 IL App (2d) 131319

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAIME L. VALLE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-1319 |
| Filed | June 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-CF-2325; the Hon. James C. Hallock, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Nischal Raval, of Morelli & Raval, of Aurora, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                     JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1         After a bench trial, defendant, Jaime L. Valle, was convicted of unlawful possession of cocaine with the intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2010)) and sentenced to six years' imprisonment. On appeal, he contends that the trial court erred in denying his motion to quash his arrest and suppress evidence. Defendant argues that the police exceeded the scope of the warrant that authorized the search leading to the evidence of his offense. We affirm.

¶ 2         Defendant was charged with unlawful possession of cocaine with intent to deliver and unlawful possession of cocaine (720 ILCS 570/402(a)(2)(A) (West 2010)). His motion to quash his arrest and suppress evidence alleged that, on March 23, 2010, while executing a search warrant, police seized evidence from a detached garage at 216 South East Avenue in Aurora. Defendant and his mother, Celia Valle, lived in the house at that address. The motion contended that the search of the garage exceeded the scope of the warrant, which was limited to the house.

¶ 3         The warrant, issued by Judge Leonard Wojtecki, read:

"On this day, March [23], 2010, Complainant [Officer Steven Stemmet] has signed and sworn to a complaint for search warrant before me. Upon examination of the complaint, I find that it states facts sufficient to show probable cause and I therefore command that the following person(s), place(s), or thing(s):

* The person of Jaime Luis Valle Male Hispanic Date of Birth 06/08/75, approximately 6'04" 315 lbs. black hair brown eyes.

* 216 S. East Av. Aurora, Kane County, IL 60505 described as a two story split level single family residence that is light blue in color with white trim. The front door to the residence is white in color with windows and faces west. There is white screen door [*sic*] with windows. There are several concrete steps, with white wrought iron railings, leading to the front door. The numerals '216' appear in black to the right of the front door. The residence has two driveways. One is in the northwest section of the yard, and the other runs along the east (rear) of the residence. The east drive leads to a large detached garage that is light blue in color with a white garage door. There is tall white fence [*sic*] in the yard. The structure is located on the northeast corner of S. East Av. and North Av. in Aurora, Kane County, Illinois; be searched and the following instruments, articles, or things which have been used in the commission of, or which constitute evidence of the offense of **Unlawful Delivery of Controlled Substance in violation of 720ILCS570/401** [*sic*] be seized therefrom.

(1) any and all substances containing cocaine;

(2) any and all documents and United States Currency relating to the purchase, sale, or distribution of cocaine, or in the proximity of any material possibly containing cocaine;

(3) any and all paraphernalia including scales, relating to the usage, sale, or distribution of cocaine;

(4) any and all electronic devices, computers, and computer equipment, related to the usage, sale, or distribution of cocaine;

(5) any and all evidence of drug co-conspirators, including photographs, ledgers, [and] records[;]

(6) indicia of residency, ownership, or possession of the above address."

¶ 4    The complaint, signed by Stemmet, stated that he had probable cause to believe, based upon the facts provided in his affidavit, that the evidence to be seized was "now located in the residence, or on the person set forth above." In his affidavit, Stemmet stated in pertinent part as follows. Several controlled buys of cocaine, using a confidential informant, had taken place at 216 South East Avenue in Aurora, from a man who matched defendant's photograph. Police records revealed that defendant resided at 216 South East. On or about March 16, 2010, Stemmet observed a man who resembled defendant's description backing his SUV out of the east driveway; Stemmet traced the vehicle's registration to Celia Valle, who also resided at 216 South East. Stemmet believed that "a search of 216 S. East Av., Aurora *** and/or on the person of [defendant] [would] result in the seizure of cocaine."

¶ 5    At a hearing on the motion, the parties stipulated that, on March 23, 2010, defendant resided at 216 South East; that the property at 216 South East included a detached garage used by defendant; and that officers discovered incriminating evidence in the garage.

¶ 6    In argument, defendant contended that the search of the detached garage exceeded the scope of the warrant. Citing *People v. Freeman*, 121 Ill. App. 3d 1023 (1984), he argued that the warrant had specified that the search was limited to the "single[-]family residence" specifically identified in the first line of the applicable paragraph. In response, the State, citing *United States v. Bennett*, 170 F.3d 632 (6th Cir. 1999), noted that the warrant explicitly mentioned the detached garage, which had the same address as the house. Further, the garage was within the curtilage of the house, validating the search. Defendant replied that *Bennett*, in which the court construed a warrant authorizing the search of the defendant's "premises" as permitting the search of a shop building located on the same property as his house (*id.* at 638), was distinguishable because "premises" has a broader meaning than the terminology used in the warrant here.

¶ 7    The trial court found *Bennett* persuasive and ruled that the search of the garage had been proper. After defendant was convicted and sentenced as noted, he timely appealed.[1]

---

[1]At oral argument, the State asserted that we lack jurisdiction to review the denial of the motion to quash and suppress, because defendant's notice of appeal specified the "[r]uling appealed from" as "the sentence" and did not mention the denial of the motion. It is true that, in general, "[a] notice of appeal confers jurisdiction on an appellate court to consider only the judgments or parts of judgments specified in the notice." *People v. Lewis*, 234 Ill. 2d 32, 37 (2009). Nevertheless, "the unspecified judgment is reviewable if it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal." *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979) (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)). Here, the denial of the motion to quash and suppress was clearly a step in the procedural progression leading to the sentence, which was the case's final judgment (*People v. Caballero*, 102 Ill. 2d 23, 51 (1984)). Thus, we have jurisdiction to review that denial.

¶ 8     On appeal, defendant contends that the trial court erred in holding that the search warrant authorized the search of the detached garage. He argues that the warrant's plain language limited any search to his person and the "two[-]story split[-]level single[-]family residence." The State responds that, because the detached garage was within the house's curtilage, the police could have searched it even had the warrant not mentioned the garage at all. Further, the warrant's mention of the "large detached garage" brought that building within the warrant's scope.

¶ 9     Because the trial court's ruling turned solely on the construction of the search warrant, our review is *de novo*. See *People v. Close*, 238 Ill. 2d 497, 504 (2010); *People v. McCarty*, 223 Ill. 2d 109, 148 (2006). A warrant should receive a commonsense and realistic interpretation. *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *People v. Bryant*, 389 Ill. App. 3d 500, 514-15 (2009).

¶ 10    In the trial court–though, strangely, not on appeal–defendant relied on *Freeman*, a 1984 opinion of this court. Although *Freeman* does appear to support his position, the opinion is legally unsound.

¶ 11    In *Freeman*, the police obtained a warrant to search a house at a given address. The requesting officer's affidavit stated that he knew that the defendant resided " 'at the premises described as a two-story wood frame single family dwelling' " located at the address and that the officer had been present personally " 'at the premises described *** above' " when cannabis had been present. *Freeman*, 121 Ill. App. 3d at 1026. The affidavit did not mention any other buildings. The opinion does not quote any part of the search warrant but describes it only as "a warrant to search a house" at the given address. *Id.* at 1024. The police searched the house. One officer then exited, approached a garage 30 or 40 feet from the house, looked in through the window, and obtained the keys to the garage from the defendant's wife, under a threat of breaking down the garage door if needed. Inside, the officers seized cannabis. *Id.* at 1025-26.

¶ 12    The trial court denied the defendant's motion to suppress. As pertinent here, the defendant argued on appeal that the garage was outside the scope of the warrant. *Id.* at 1031. This court agreed, reasoning, "[t]he warrant clearly did not include the garage, and the cannabis was not within the plain view of the officer from a place where he had a right to be." *Id.* We noted that the garage had been 30 to 40 feet away from the house and that the evidence showed that the defendant had reasonably expected that its contents would remain private. *Id.*

¶ 13    However, the problem with *Freeman* is that, even though the warrant expressly included only the defendant's residence, the garage was within the curtilage of the defendant's residence. Thus, per the settled law that we discuss below, the warrant authorized the search of the defendant's garage. For the same reason, the warrant here authorized the search of defendant's garage.[2]

---

[2]We observe that here, unlike in *Freeman*, the warrant at least *mentioned* the garage. The parties dispute the significance of that mention; the State asserts that it made the garage a "place" that the warrant expressly authorized the police to search, whereas defendant maintains that it was "merely included to assist the officers executing the warrant in identifying the structure[, *i.e.*, the residence itself,] they were authorized to search." We need not resolve this dispute. As the State also argues, because the garage was within the curtilage of the residence, the search of the garage would have been authorized even had the warrant not mentioned it at all.

¶ 14     Under Illinois law, "[t]he curtilage, that is, the land immediately surrounding and associated with the home, has been considered part of the home itself for fourth amendment purposes." *People v. McNeal*, 175 Ill. 2d 335, 344 (1997). Thus, "[t]he government cannot search a home and its curtilage absent a warrant or some exception to the warrant requirement." *People v. Pitman*, 211 Ill. 2d 502, 518 (2004); see also *People v. Accardi*, 284 Ill. App. 3d 31, 34 (1996). Necessarily, if the curtilage is considered part of the home for purposes of the fourth amendment's protection against warrantless searches, then the curtilage must be considered part of the home for purposes of a warrant to search that home. In other words, a warrant to search the home legitimizes the search of those areas considered under the fourth amendment to be part of that home.

¶ 15     This truism is confirmed by case law from other jurisdictions. In *Bennett*, on which the trial court relied, the warrant authorized a search of "the premises known and numbered as[ ] 792 Goshen-Church Road" in Bowling Green, Kentucky. *Bennett*, 170 F.3d at 637. It continued that the premises were "more particularly described" as follows:

> "Single story frame home, yellow siding, reddish shutters. The house is approximately a quarter mile off Porter Pike on the right side of the road.
>
> There is a detached shop building, with overhead or sliding doors on both ends. Same color as the home." *Id.* at 637-38.

¶ 16     In executing the warrant, the police searched the residence and the shop building, which were approximately 60 to 100 feet apart. *Id*. at 638. The court of appeals affirmed the defendant's conviction of several drug offenses, holding in part that the warrant's phraseology was "certainly broad enough to include a shop building located in the curtilage of the property *** at most, 100 feet away from the residence." *Id.* at 639. The two buildings were, "for all practical purposes, one single location because the outbuilding [was] within the curtilage of the 'premises' for which the search warrant was issued." *Id.*

¶ 17     *Bennett* relied in part on *Fine v. United States*, 207 F.2d 324 (6th Cir. 1953). *Bennett*, 170 F.3d at 639. *Fine* held that a warrant authorizing the search of " 'the premises known as the Harve Fine residence and being a one story white frame dwelling' " (*Fine*, 207 F.2d at 324) also authorized searching a shed located in a yard 20 feet behind the house (*id.* at 325). The court reasoned that, although the warrant did not explicitly mention the shed, the phraseology just quoted was "broader than a mere description of the house and certainly include[d] the curtilage." *Id.*

¶ 18     Here, defendant concedes that the detached garage was within the curtilage of the house at 216 South East. However, he asserts that *Bennett* is distinguishable because there the warrant used the term "premises," a term of art with a broad meaning, whereas here the warrant referred in "boiler plate" to only "place(s)." We disagree with defendant that this difference is crucial. Although the use of the term "premises" validates the search of an outbuilding within the curtilage of a residence even if the warrant itself does not mention the outbuilding, the absence of the "magic word" "premises" does not bar the search under similar circumstances.

¶ 19     Preliminarily, we note that the detached garage was within the curtilage of the house. "In determining whether a particular area falls within a home's curtilage, a court asks whether the area harbors the intimate activities commonly associated with the sanctity of a person's home and the privacies of life." *Pitman*, 211 Ill. 2d at 516. "The extent of the curtilage is determined by factors 'that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself.' " *Id.* (quoting *United States v. Dunn*, 480 U.S.

294, 300 (1987)). "These factors include: (1) the proximity of the area claimed to be the home's curtilage; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by." *Id.* (citing *Dunn*, 480 U.S. at 301). The "generally accepted" definition includes " 'those outbuildings which are directly and intimately connected with the habitation and in proximity therein and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment.' " *People v. Jones*, 119 Ill. App. 3d 615, 621 (1983) (quoting Black's Law Dictionary 346 (5th ed. 1979)).

¶ 20 Here, according to defendant's testimony at trial,[3] the garage was within 75 to 100 feet of the house, about the same distance as separated the house and the shop in *Bennett*. It is undisputed that the garage was within the same enclosure as the house and shared its address. Defendant testified that he kept vehicles and some personal items in the garage and that the garage required a pass code for entry. Thus, we would reject any contention that the detached garage was outside the curtilage of the house.

¶ 21 Defendant cites *United States v. Longie*, 370 F. Supp. 2d 941 (D.N.D. 2005), in which the federal district court did hold that a building not specifically named in the search warrant was not part of the curtilage of the residence that the warrant authorized law enforcement officers to search. *Longie* is distinguishable. It is also questionable as a statement of the governing law.

¶ 22 In *Longie*, the warrant authorized the search of a named residence on a Sioux Indian Reservation, for evidence of an alleged assault committed inside the house. The warrant did not mention a dilapidated shed that was approximately 60 yards west of the residence. The investigative report on the search of the house and shed described the shed as " 'abandoned,' " and, according to one of the residents of the house, the shed belonged to her grandmother, who resided at an unknown location (not the house). *Id.* at 943.

¶ 23 The district court held that the search of the shed had exceeded the scope of the warrant. The court noted that the warrant had referenced only the house and had not used either the term "premises" or the term "property"; had it done so, it would likely have authorized the search of any buildings located on the premises. *Id.* at 944. Further, the court held, the shed had not been within the curtilage of the house, as it did not pass the four-factor test: it was run down and no longer had doors or windows, it was not fenced in or protected, and there was no evidence that the occupants of the residence had been concerned about trespassers or people who might look into the shed. *Id.* at 945. Although the case presented a "close issue," the court concluded that the warrant had not authorized the search of the shed. *Id.*

¶ 24 Aside from being the opinion of one judge at the trial court level, *Longie* is easily distinguishable. Here, there was undisputed evidence, which we have summarized, that the detached garage "was used for activities and privacies of life which would intimately tie [it] to the house and make it part of the curtilage." *Id.* at 942. Unlike the shed in *Longie*, the detached garage in this case (1) was owned (or at least possessed) by the owner (or possessor) of the house; (2) was regularly used by the residents of the house, including for such basic purposes as storing vehicles and driving them out of and into the garage; (3) was protected by a pass code or key; and (4) was located much closer to the residence at issue than the shed in *Longie*

---

[3]In reviewing the denial of a motion to suppress, we may consider the entire record. *People v. Hieber*, 258 Ill. App. 3d 144, 151 (1994).

had been. In short, *Longie*'s discussion of the curtilage issue does not help defendant. If anything, the fact that the trial court described the issue as a close one, despite all of the foregoing, strongly suggests that *Longie* indirectly supports the State in this case.[4]

¶ 25    We return to defendant's attempt to distinguish *Bennett*. He maintains that *Bennett* differs from this case because the warrant there used the term "premises," which, he essentially concedes, has been given a broad construction that would include the detached garage here.

¶ 26    We agree with defendant (and the State) that courts have repeatedly and routinely held that a warrant that authorizes the search of "premises" at a given residential address allows the search of detached garages, sheds, and other outbuildings even if these separate structures are not mentioned at all in the warrant. See, *e.g.*, *People v. Taylor*, 205 Ill. App. 3d 446, 447-48 (1990) (warrant allowing search of " 'premises' " "was not limited to defendant's home or residence" but extended to detached garage); *United States v. Earls*, 42 F.3d 1321, 1326-27 (10th Cir. 1994) (warrant to search premises allowed search of outbuildings within curtilage); *United States v. Griffin*, 827 F.2d 1108, 1114-15 (7th Cir. 1987) (warrant allowing search of " 'premises' " but specifically mentioning only house and detached garage allowed search of yard and toolshed); *United States v. Bonner*, 808 F.2d 864, 868 (1st Cir. 1986) (general rule); *United States v. Moore*, 743 F.2d 254, 255-56 (5th Cir. 1984) (warrant allowing search of " 'premises' " described as " 'certain building, house or place' " also allowed search of garage 35 to 40 feet away on same property); *United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982) (warrant allowing search of " 'premises' " described only by geographical location allowed search of buildings on land described); Black's Law Dictionary 1062-63 (5th ed. 1979) ("premises" includes "[l]ands and tenements; an estate, including land and buildings thereon").

¶ 27    While the use of the term "premises" would have beyond peradventure authorized the search of the detached garage, it does not follow that the absence of that term meant that the warrant did not authorize the search. As noted, the detached garage was within the house's curtilage. Ample case law supports the commonsense conclusion that "premises" is not a magic word that must be used in a situation such as this one.

¶ 28    In *State v. Basurto*, 807 P.2d 162 (Kan. Ct. App. 1991), the warrant at issue authorized the search of " '2528 N. Mascot, Wichita ***, to be a single story residential structure ***.' " *Id.* at 163. The warrant described the house in detail, listed the items for which the search was to be made, and stated that those items were " 'located in or upon the above described persons, places, things, or means of conveyance.' " *Id.* In executing the warrant, officers searched an unattached shed located in back of the house and seized cocaine. *Id.*

¶ 29    On appeal from his conviction of two drug offenses, the defendant argued that the warrant had not authorized the search of the shed. The appellate court disagreed. It noted that, because the curtilage of a house is generally afforded the same fourth-amendment protection as the house itself, "it has been generally held that a search warrant describing only the residence will

---

[4]*Longie* is also legally dubious, and certainly contrary to the weight of authority that we shall soon discuss, insofar as it holds that the warrant's failure to mention the shed, combined with its failure to use a broad term such as "premises" or "property," ruled out searching the shed even if it had been within the curtilage of the residence.

authorize a search of any buildings or vehicles within the 'curtilage' even though they are not specifically described in the warrant." *Id.*

¶ 30 After citing numerous authorities to this effect and holding that the shed had been within the house's curtilage (*id.* at 163-65), the court turned to the defendant's contention that cases such as *Moore* were distinguishable because the warrants there had used the term "premises," which had been absent from the warrant in *Basurto*. *Id.* at 165. The court cited *People v. Muniz*, 597 P.2d 580 (Colo. 1979), in which the Colorado Supreme Court had upheld the search of an unattached shed even though the warrant had specifically mentioned only the defendant's residence and had not employed the term "premises." The court noted that the shed had been located near the house in an enclosed area to which the defendant had had access. *Id.* at 581.

¶ 31 The *Basurto* court explained:

"We agree with the basic thrust of the Colorado decision. While the use of the term 'premises' in a search warrant may be desired to avoid arguments such as the one with which we now deal, it is not required in every instance. The law is clearly established that a search warrant which describes a specific residence authorizes a search of the 'curtilage' of that residence. Indeed, a construction such as that urged by the defendant would be, in our opinion, the sort of hypertechnical construction of a search warrant which has been condemned by the United States Supreme Court. [Citation.] It would appear to be a hypertechnical view of the issue to hold that the word 'premises' has some magical meaning and that the failure to use that one term dooms the search in this case. We hold that the search warrant in question authorized the search of not only the residence, but *** the curtilage of the defendant's residence." *Basurto*, 807 P.2d at 166-67.

¶ 32 *Basurto* and *Muniz* are not the only opinions that have rejected defendant's contention that a warrant's use of the word "premises" is essential to validating a search of a building that is not named in the warrant but is within the curtilage of the residence that is named. See *United States v. Finnigin*, 113 F.3d 1182, 1186 (10th Cir. 1997) (outbuildings and vehicles within curtilage of residence named in warrant could have been searched legally even had they not been named in the warrant); *Bonner*, 808 F.2d at 868 (warrant's use of " 'properties' " instead of " 'premises' " was of no consequence, as terms were "interchangeable"; thus, search of separate garage not mentioned in warrant to search residence was proper).

¶ 33 Finally, we observe that, in *United States v. Gorman*, 104 F.3d 272, 273 (9th Cir. 1996), police officers obtained a warrant to search the immobile bus that the defendant used as a residence and from which he allegedly had been selling marijuana. The warrant commanded the officers to search the bus/residence but did not use the term "premises" or similar broadening phraseology and did not mention the curtilage. *Id.* The trial court granted the defendant's motion to suppress a gun that the police had found beside some lawn chairs outside the bus/residence, reasoning that the warrant authorized the search of the bus/residence but not of the curtilage. *Id.* at 273-74.

¶ 34 The appellate court reversed, explaining that "[t]he curtilage is simply an extension of the residence's living area, and *** such extensions become part of the residence for purposes of a search warrant." *Id.* at 274. According to the court, "*Every* published opinion addressing the issue has concluded that a warrant authorizing the search of a residence *automatically* authorizes a search of the residence's curtilage. [Citations.]" (Emphases added.) *Id.* at 275.

Thus, despite the warrant's failure to mention the curtilage, the seizure of the gun had been proper.

¶ 35　　　　Here, although the warrant expressly authorized the search of defendant's residence, the detached garage was within the curtilage. Thus, according to long-standing case authority, the detached garage was a proper object of the search; had the issuing judge wished to *exclude* the garage, despite that case authority, he could have and would have done so expressly. As a result, the trial court properly denied defendant's motion to quash his arrest and suppress evidence.

¶ 36　　　　For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 37　　　　Affirmed.